## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY, KANSAS

MARQUELL LONZO, TERRANCE
HOLLIS, MEGAN LONZO, individually
and J.W. a minor, by and through MEGAN
LONZO, Natural Mother, Legal Guardian
and Next Friend,

        Plaintiffs,

-vs-                                  Case No.

BURLINGTON NORTHERN AND
SANTA FE RAILWAY CO. d/b/a
BNSF RAILWAY COMPANY, a foreign
business,

        Defendants.

_____

## COMPLAINT

COMES NOW the Plaintiffs, by and through counsel, Tony L. Atterbury, Bradley A. Pistotnik and  Jay Sizemore of Brad Pistotnik Law, P.A. for the Plaintiffs' claims against Defendant, alleges and states:

1.      The Plaintiff, Marquell Lonzo, is a resident of the city of Wichita, Sedgwick County, Kansas.

2.      The Plaintiff, Megan Lonzo, is a resident of the city of Wichita, Sedgwick County, Kansas.

3.      The Plaintiff, J. W., a minor, is a resident of the city of Wichita, Sedgwick County, Kansas.

4.      The Plaintiff, Terrance Hollis, is a resident of the city of Wichita, Sedgwick County, Kansas.

1

5.      Defendant Burlington Northern and Santa Fe Railway Co. d/b/a BNSF Railway Company (BNSF), is a Delaware Corporation and maybe served by serving the resident agent, the Corporation Company, Inc. 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

6.      This Court has proper venue and jurisdiction over the persons and subject matter.

7.      This Action is brought pursuant to 28 U.S.C. Section 1332(a) on the basis of diversity of citizenship. The matter is in excess of the sum of Seventy-Five Thousand and no/100 Dollars ($75,000.00) exclusive of interest and costs.

8.      Venue is proper in the Kansas City, Kansas District of the Federal District Court of Kansas.

9.      Defendant's driver, was employed by and in the course and scope of his employment with the Defendant BNSF, at the time of the collision with the Plaintiffs.

10.      Defendant's Driver, was operating a vehicle owned by the Defendant BNSF at the time of the collision with the Plaintiffs.

11.     For all allegations brought in this Complaint, the actions and omissions of the driver, are the acts and omissions of Defendant BNSF, under the theory of Respondeat Superior and Vicarious liability.

12.      Defendant BNSF applied for motor carrier authority under the United States Department of Transportation to operate a motor carrier under D.O.T. No. 281683. Under the Federal Motor Carrier Safety Regulations (FMCSR), the 2015 Ford Pick-up Truck being operated by the driver and Defendant BNSF, in this case is a commercial motor vehicle.

2

13.   On or about November 25th 2016,  Plaintiff, Marquell Lonzo was operating a motor vehicle and traveling eastbound on 21st Street in the city of Wichita, Sedgwick County, Kansas in the outside lane. Plaintiffs, Megan Lonzo, Jalon Washington, Terrance Hollis, were passengers in the same vehicle. Defendant's driver, Christopher L. Irey, was also east bound on 21st Street in the city of Wichita, Sedgwick County, Kansas in the inside lane. Defendant's driver, Christopher Irey, negligently drove a motor vehicle and changed lanes and collided with the Plaintiffs' vehicle causing an accident. Defendant's driver, negligently and carelessly changed lanes and side swiped Plaintiffs' vehicle  thereby proximately causing an accident, injuries and damages to the Plaintiffs.

14.   Plaintiff, Marquell Lonzo, sounded his horn just prior to accident, however Defendant's driver, did not stop and collided with the Plaintiffs' vehicle.

15.   The FMCSA website knows as https://safer.fmcsa.dot.gov/companysnapshot.aspx provides a company snapshot that was printed on September 6, 2017 which records the **CSA** information for the past 24 months preceding the date of September 6, 2017. This printout is attached as **Exhibit A.** This government publication of public information about Defendant BNSF provides evidence that this motor carrier is an unsafe motor carrier that fails to follow and adhere to the Federal Motor Carrier Safety Regulations under the Code of Federal Regulations on a routine habitual and customary business practice. This exhibit establishes that in the past 24 months, this carrier has had 311 violations of the FMCSR with many of the violations showing that this motor carrier allows drivers that are not properly licensed or have

suspended license to operate a commercial motor vehicle, drives over the maximum amount of service rules and has drivers that fail to maintain appropriate log books.

16. **Exhibit A** establishes that defendant BNSF has 2,894 power units and 7,695 drivers. This same exhibit establishes that they have been involved in 26 reportable crashes in the last 24 months.

17. The pick-up truck being operated by Defendant BNSF and their driver was operating in interstate and intrastate commerce making it subject to the Federal Motor Carrier Safety Regulations issued under 49 C.F.R. Sections 381 through 399 which are enforceable pursuant to the Motor Carrier Act, PL 96-296, 1980 S 2245 and PL 96-296, July 1, 1980, 94 Stat 793.

18. The pick-up truck being operated by Defendant driver that was involved in this collision was dispatched, supervised, monitored, operated, and controlled by the department of operations, and the fleet management of Defendant BNSF.

19. The Defendant driver was hired, qualified, supervised, and trained by Defendant BNSF.

20. The Defendant driver was operating as a motor carrier as defined by the Federal Motor Carrier Safety Regulations (FMCSR).

21. That at all times material hereto Defendant and their driver were operating under authority through the Department of Transportation (DOT) under their respective DOT licenses as set forth in preceding paragraphs above.

22. 49 C.F.R. § 390.3(e)(1) & (2) provide that every driver and employee shall be instructed regarding and shall comply with all applicable regulations contained in the FMCSR.

23.    49 C.F.R. § 390.4 provides that "motor carrier" means a for-hire motor carrier or a private motor carrier. That term includes a motor carrier's agents, officers, and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers.

24.    Defendant and their driver were at all material times a "motor carrier" and an "employer" of its driver as defined as defined in 49 C.F.R. §382.107.

25.    49 U.S.C. § 14704(a)(2) provides that "A carrier…is liable for damages sustained by a person as a result of an action or omission of that carrier…in violation of this part." Defendant BNSF is the motor carrier in regard to the present accident.

26.    49 U.S.C. § 14101(a) provides that "a motor carrier shall provide safe and adequate service, equipment and facilities." Defendant and their driver negligently and wantonly failed to provide safe and adequate service which proximately caused the injuries and damages to Plaintiffs.

27.    The FMSCRs are located at 49 C.F.R. § 390 *et seq*. The FMCSSRs and the MCA specifically under the section 40 C.F.R. § 391.1(a) and (b) states "(a) The rules in this part establish minimum qualifications for person who drive commercial motor vehicles, as, for, or on behalf of motor carriers. The rules in this part **also establish minimum duties of motor carriers with respect to the qualification of drivers.** (b) A motor carrier who employs himself/herself as a driver must comply with both the rules in this part that apply to motor carriers and the rules in this part that apply to drivers." The FMCSR's set forth the applicable minimum duties for drivers under 49 C.F.R. § 391.1(a) & (b).

28.    The Defendant motor carrier and their driver acted negligently and wantonly by driving too fast for the traffic conditions and then side swiping the Plaintiffs, who were properly traveling in their lane of travel. The 311 violations in **Exhibit A** establishes evidence that is categorized as dangerous driving and by having an extraordinary history of violations of the FMCSR combined with having a faulty safety program which is preplanned and ultimately fails to meet the minimum requirements of the FMCSR and allows the company to negligently and improperly fail to properly qualify, train and supervise drivers like Christopher Irey. This lack of development of appropriate safety countermeasures was as a result of willful and conscious decision by BNSF to avoid spending necessary funds and monies to appropriately recruit, qualify, hire, train and supervise drivers with appropriate hazard perception training, defensive driving training and other safety countermeasures prescribed by the DOT and FMCSR in order to minimize preventable accidents which would have helped this driver avoid this accident. It is further believed that they have consciously failed to conduct appropriate audits of the drivers hours-of-service records to meet the minimum industry standard that is required. They have underutilized log audits in a conscious decision to avoid hiring additional log auditing people which allows them to save money and increase profits at the expense of the plaintiff and the traveling public. BNSF's decision to avoid spending monies on appropriate safety countermeasures prescribed by the Federal Motor Carrier Safety Administration (FMCSA) and the Federal Motor Carrier Safety Regulations (FMCSR) is an express or implied ratification of the

6

conduct of the driver in driving their commercial motor vehicle (CMV) in an unsafe and inappropriate manner.

29.     **Exhibit A** establishes that BNSF has a systemic problem which is a habit, custom and routine practice of allowing hours-of-service violations; a habit, custom and routine practice of unsafe driving violations; as well as custom, habit and a routine business practice of failing to appropriately maintain its fleet of commercial motor vehicles for safety.

30.     The allegations contained in this Complaint regarding the Federal Motor Carrier Safety Regulations (FMCSR) are set forth to establish that the Defendant did not comply with the industry standard of care and the minimum standards of care described under the FMCSR to establish the negligence of the Defendant.

31.     The actions and omissions of the driver are the actions and omissions of Defendant, BNSF, under the doctrines of Respondeat Superior and Vicarious Liability and upon information and belief, are negligent, careless, and wanton and include but are not limited to:

A.     Operation of a commercial motor vehicle in a fatigued state;

B.     Operation of a commercial motor vehicle while looking down away from the traveled road;

C.     Operation of a commercial motor vehicle while using a cellular phone, PDA or other message device to receive orders to pick up a new load and looking away from the traveled highway;

D.     Speeding in excess what was reasonable for the then existing conditions of slower moving traffic and speeding;

E. Failure to comply with and follow the minimum standards of care and safety set forth in the Kansas Commercial Drivers License Manual which require a commercial motor vehicle to yield top passing vehicles (**See Exhibit B**). The entirety of **Exhibit B** is incorporated in its entirety herein;

F. Failure to keep a proper lookout;

G. Inattentive operation of a commercial motor vehicle;

H. Failure to exercise ordinary and reasonable care;

I. Failure to warn;

J. Failure to brake;

K. Operation of a commercial motor vehicle in a wanton, reckless or careless manner;

L. Operation of a commercial motor vehicle without first ascertaining that movement can be safely made;

M. Operation of a commercial motor vehicle in a fatigued state;

N. Failing to immediately terminate the driver;

O. Failing to immediately reprimand the driver;

P. Failing to retrain the driver shortly after this accident causing injuries;

Q. Failing to conduct a post-accident preventability study;

R. For failing to meet the minimum duties and industry standards of care set forth under 49 CFR §§ 381 through 399;

S. For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 392.14 by failing to use extreme caution in the operation of a commercial motor vehicle when hazardous conditions exist and/or by failing to discontinue the operation of the motor vehicle until the vehicle could be operated

safely;

T.    For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 392.3 by operation of a commercial motor vehicle while the driver's ability or alertness is impaired;

U.    For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 395.3 by driving more than the maximum hours allowed by this regulation;

V.    For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 395.8 by failing to record his logs timely, truthfully, and in conformance with this regulation;

W.    For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 391.11(a) by operation of a commercial motor vehicle when the driver is not properly qualified pursuant to this regulation;

X.    For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.113 by operating a commercial motor vehicle when the driver does not possess and demonstrate the safe driving skills required by this regulation;

Y.    For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.111 by operating a commercial motor vehicle when the driver did not have sufficient basic knowledge of safe operating regulations, including the effects of fatigue, safety systems knowledge, basic knowledge of basic control maneuvers, and basic information on hazard perception and when and how to make emergency maneuvers;

Z.    For failing to meet the minimum duties and industry standards of care set forth under

49 C.F.R. § 383.110 by operation of a commercial motor vehicle without the knowledge and skills necessary to operate the same safely;

AA.   For failing to meet the minimum duties and industry standards set forth under 49 C.F.R. § 390.11 by failing to observe and follow the FMCSR;

BB.   For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 392.2 by dangerous and improper passing at a severity weight level of 5;

CC.   For failing to meet the minimum duties and industry standards of care set forth under 49 CFR § 395 by failing to adequately document the driver's record of duty;

DD.   For failing to meet the minimum duties and industry standards of care set forth under 49 CFR § 395.3 by requiring their driver to work in excess of the maximum hours and days allowed by Federal laws and regulations.

EE.   For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 392.3 by requiring their driver to operate a commercial motor vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle;

FF.   For failing to meet the minimum duties and industry standards of care set forth under 49 CFR § 383.113 by failing to have adequate safety management controls in place that would require and provide that the driver had the required skills required under this regulation;

GG.   For failing to meet the minimum duties and industry standards of care set forth under 49 CFR § 391.11 and 391.23 by failing to properly qualify the driver, and by failing

to obtain the federally required information on the application for employment of their driver with appropriate 3 year background checks, criminal history checks and obtaining actual responses from prior employers;

HH.   For failing to meet the minimum duties and industry standards of care set forth under 49 CFR § 391.31 by failing to properly road test their driver;

II.   For failing to meet the minimum duties and industry standards of care set forth under 49 CFR § 395.8 by failing to properly document the hours of service and record of duty of their driver;

JJ.   Negligent hiring, retention, qualification, supervision, and training of the driver and supervisory managers above the driver;

KK.   The Defendant and its respective agents, employees and representatives were careless and negligent and wanton for negligent hiring, training, supervision, and retention of driver and his supervisory personnel.  Defendant negligently and/or wantonly hired unfit employees and agents and then failed to properly train, supervise, and monitor them and additionally retained employees and agents that were not performing their jobs properly or adequately. This includes, but is not limited to, the driver and his supervisory personnel. Defendant has an obligation to use reasonable care in selecting and retaining their employees, agents, and independent contractors, and was negligent in hiring, selection, training, monitoring and retaining their employees, agents, and independent contractors, including, but not limited to driver.  Defendant negligently and wantonly failed to use reasonable care in the hiring, selecting, training, monitoring, and retention of their employees and agents, including, but not limited to driver.  Defendant knew

or reasonably should have known that they were not hiring safe and competent employees and agents and negligently and wantonly violated their duty to hire only safe and competent employees.  Defendant knew or reasonably should have known that their employees and agents, including, but not limited to driver, created and were an undue risk of harm to the Plaintiffs, and negligently and wantonly failed to reprimand, retrain, or terminate their employees, agents, and independent contractors, including the driver and his supervisory personnel;

LL.     Defendant's hiring, training, monitoring, supervision, and retention of unsafe and incompetent employees, agents, and independent contractors including the driver and his supervisory personnel proximately caused the injuries to the plaintiffs;

MM.   Failure to train the driver in the proper hazard communication signals, hazard perception, and other safe operating protocols.

NN.    Failing to have adequate safety management protocols in place.

OO.    Failing to properly create and implement a proper safety program that would require the driver to be adequately tested in written form to determine that he has appropriate defensive driving skills;

PP.     Failure to test the driver of their commercial motor vehicle for alcohol and drug consumption after this accident.

QQ.    The Defendant has ratified all conduct of their driver either expressly or impliedly. Upon information and belief, the driver was not reprimanded, retrained, or terminated following this accident.

RR.     Ratification of the driver's conduct is further established by having a substantial violation history of the D.O.T. and FMCSR regulations for this Defendant motor

carrier which establishes that the Defendant has a pattern, custom, and habit of habitually violating the FMCSR.

SS.    The Plaintiffs' are entitled to punitive damages in addition to actual damages as a result of the wanton conduct of the Defendant as stated in all allegations set forth above in this Complaint.

TT.    For other actions and omissions that will be supplemented after the receipt of full and complete discovery in this case.

32.    As a further direct and proximate result of the negligent and careless actions and omissions of the Defendant, as aforesaid, the Plaintiff Marquell Lonzo was injured. He has received injuries to the Plaintiff's body, including, but not limited to his head, neck and low back, and may have had aggravation to a pre-existing condition and was otherwise injured. The Plaintiff has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. In the future, the Plaintiff will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, the Plaintiff has been damaged in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

33.    As a further direct and proximate result of the negligent and careless actions and omissions of the Defendant, as aforesaid, the Plaintiff, Megan Lonzo was injured.  She has received injuries to the Plaintiff's body, including, but not limited to her back and left shoulder  and may have had aggravation to a pre-existing condition and was otherwise injured. The Plaintiff, Megan Lonzo, has been damaged with pain and

suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. In the future, the Plaintiff, Megan Lonzo, will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, the Plaintiff has been damaged in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

34.   As a further direct and proximate result of the negligent and careless actions and omissions of the Defendant, as aforesaid, the Plaintiff J.W. was injured.  He has received injuries to the Plaintiff's body, including, but not limited to his head, neck, back and left knee, and may have had aggravation to a pre-existing condition and was otherwise injured. The Plaintiff, J.W., has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. In the future, the Plaintiff, J. W., will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, the Plaintiff has been damaged in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

35.   As a further direct and proximate result of the negligent and careless actions and omissions of the Defendant, as aforesaid, the Plaintiff Terrance Hollis was injured. He has received injuries to the Plaintiff's body, including, but not limited to his head and back, and may have had aggravation to a pre-existing condition and was otherwise injured. The Plaintiff, Terrance Hollis, has been damaged with pain and suffering,

mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. In the future, the Plaintiff, Terrance Hollis, will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, the Plaintiff has been damaged in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

36.    Plaintiffs, Megan Lonzo and Marquell Lonzo, bring actions for loss of consortium and services suffered by their spouses.

WHEREFORE, each of the Plaintiffs pray for judgment against Defendant, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), for costs herein, and for such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**BRAD PISTOTNIK LAW, P.A.**

*s/ Tony L. Atterbury*
Tony L. Atterbury, #20314
Jay H. Sizemore, #20395
10111 E. 21st Street, Suite 204
Wichita, Kansas 67206
316-684-4400/ Fax: 316-684-4405
tony@bradpistotniklaw.com
jay@bradpistotniklaw.com
*Attorneys for Plaintiffs*

15

## DEMAND FOR PRETRIAL CONFERENCE AND JURY TRIAL

COMES NOW the Plaintiffs and demand a pretrial conference and a trial by jury of twelve (12) persons in this matter.


## DESIGNATION FOR PLACE OF TRIAL

COMES NOW the Plaintiff and designates Kansas City, Kansas as the place for trial in this matter.


_s/ Tony L. Atterbury_____
Tony L. Atterbury, #20314

16